# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KA YING XIONG,<br><br>        Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. 1:17-cv-00107-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision of the Commissioner of the Social Security Administration regarding her application for Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 8, 9).

The Court, having reviewed the record, administrative transcript, the briefs of the parties, the applicable law, and having heard oral argument, finds as follows:

Plaintiff claims that the ALJ erred in discounting three documents entitled "Mental Disorder Questionnaire For Evaluation of Ability to Work." Each was prepared and signed by a medical professional that was not a physician, and was also signed by Plaintiff's treating physician. Specifically, the questionnaires at Administrative Record ("AR") 565-567 and 577-579 were prepared and signed by Leslie Chang, Personal Service Coordinator-B. Treating

Physician Dr. Robert T. Ensom also signed under the notation, "Reviewed by and Agree." AR 567, 577. Another such questionnaire was prepare and signed by Ze Vang, MFT Intern, with Dr. Ensom again signing under the notation, "Reviewed by and Agree." AR 650.

The ALJ addressed these questionnaires in detail in his opinion. He concluded as to them that "[t]he Administrative Law Judge gives little weight to these opinions as the Administrative Law Judge notes that Dr. Ensom did not prepare any of these three exhibits bearing his signature, but rather concurred upon review with the assessments that were made by an MFT intern and a personal services coordinator, who are unacceptable medical sources." AR 15-16.

Plaintiff argues that the ALJ's treatment of these questionnaires was legal error. (ECF No. 14 at 8) ("[T]he fact that the forms were prepared by Chang and Vang does not mean the assessments were not 'made' by Dr. Ensom, who is undeniably an acceptable medical source. In sum, Dr. Ensom's involvement makes clear that the ALJ's rationale for dismissing the treating assessments is not a specific and legitimate [reason] supported by substantial evidence."). Plaintiff relies on *Benson v. Barnhart*, 331 F.3d 1030 (9th Cir. 2003). In that case, the Ninth Circuit held that a psychiatrist who oversaw a treatment team could be considered a treating source even if he saw claimant only once. However, in that case the physician himself authored the opinion at issue. *Id.* at 1036 ("Dr. Zwiefach completed the mental assessment of Benton based on his assessment of information provided by those on the treatment team with more direct patient contact . . . ."). Here, in contrast, the physician did not prepare the underlying opinions. Instead, he signed opinions prepared by non-physicians.

The Court has located additional cases addressing this issue. They discuss how there used to be a regulation that provided that "[a] report of an interdisciplinary team that contains the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence," 20 C.F.R. § 416.913(a)(6) (repealed); however, that regulation was amended in 2000 to remove that language. Following the amendment, courts have found that opinions of non-acceptable medical providers are not transformed into acceptable medical evidence merely by the signature of an acceptable medical source. The case of *Vega v. Colvin*, No. 14CV1485-LAB (DHB), 2015 WL 7769663, at *12-13 (S.D. Cal. Nov. 12, 2015), r*eport and recommendation*

2

*adopted*, No. 14CV1485-LAB (DHB), 2015 WL 7779266 (S.D. Cal. Dec. 2, 2015) evaluated this history and case law in holding that the opinion of a nurse practitioner that was reviewed and agreed by a medical doctor was not considered an "acceptable medical source," explaining at length:

> Plaintiff contends that although Ms. Johnson is a nurse practitioner, the form containing her opinions clearly indicates that it was reviewed and agreed with by a medical doctor. In so doing, Plaintiff relies on *Taylor v. Comm'r of Soc. Sec. Admin.,* 659 F.3d 1228 (9th Cir.2011), in which the Ninth Circuit recognized that "nurse practitioners are listed among the examples of 'medical sources' " contained in the regulations. *Taylor,* 659 F.3d at 1234. The Ninth Circuit then found that "[t]o the extent [the] nurse practitioner ... was working closely with, and under the supervision of [the doctor], her [*i.e.,* the nurse practitioner] opinion is to be considered that of an 'acceptable medical source.' " *Id.* (citing *Gomez v. Chater,* 74 F.3d 967, 971 (9th Cir.1996)). This finding was based on the Ninth Circuit's prior decision in *Gomez,* which involved a nurse practitioner, Debra Blaker, which had consulted with the treating doctor, Dr. Kincade, regarding Gomez's treatment "numerous times over the course of her relationship with Gomez. NP Blaker worked closely under the supervision of Dr. Kincade and she was acting as an agent of Dr. Kincade in her relationship with Gomez. Her opinion was properly considered as part of the opinion of Dr. Kincade, an acceptable medical source." *Gomez,* 74 F.3d at 971.
>
> Here, there are no opinions from any of the physicians at Project Enable that Ms. Johnson's opinion could properly be considered a part of. Moreover, there is no evidence in the record suggesting that Ms. Johnson consulted with or worked closely under the supervision of any of the Project Enable physicians, let alone the doctor that agreed with her September 2013 report. In fact, as noted above, *see supra* note 4, although Ms. Johnson's opinion contains a handwritten note from a doctor expressing agreement with her report, it is unclear who this doctor was. What is clear is that this doctor was neither Dr. Flanagan nor Dr. Jaurigue, the two doctors at Project Enable that had also treated Plaintiff. Thus, the principle set forth in *Gomez* and *Taylor* that a nurse practitioner's opinions may be considered as part of a treating physician's opinion based on that physician's close supervision with the nurse practitioner does not apply in this case. *See Farnacio v. Astrue,* No. 11–CV–065–JPH, 2012 U.S. Dist. LEXIS 130913, at *18–19 (E.D.Wash. Sept. 12, 2012) (finding *Gomez* inapplicable where "there is no evidence that [physician's assistant] consulted with or worked as closely with any other physician as the evidence reflected in *Gomez.*").
>
> The *Gomez* decision was also based on the Ninth Circuit's reading of 20 C.F.R. § 416.913(a)(6), which at the time of the decision provided that "[a] report of an interdisciplinary team that contains the signature of an acceptable medical source is also considered acceptable medical evidence." *Gomez,* 74 F.3d at 971. The Ninth Circuit went on to state that "[w]hile nowhere in the regulations is

the term 'interdisciplinary team' expressly defined, a plain reading ... indicates that a nurse practitioner working in conjunction with a physician constitutes an acceptable medical source, while a nurse practitioner working on his or her own does not." *Id.* However, as numerous district courts in the Ninth Circuit have recognized, both before and after *Taylor,* the regulation relied on in *Gomez* regarding "interdisciplinary teams" involving "other sources" such as nurse practitioners and physician assistants has since been amended, and "interdisciplinary teams" are no longer considered "acceptable medical sources." *See, e.g., Harrison v. Comm'r of Soc. Sec. Admin.,* No. 3:13–cv–8177–HRH, 2014 U.S. Dist. LEXIS 52623, at *17–18 (D. Ariz. April 16, 2014) ("[T]here is nothing in the record that indicates that Dr. Sadowski supervised [physician assistant] Barnes or was involved in plaintiff's mental health treatment in any way. Dr. Sadowski's signature on the mental capacities form does not transform Barnes' opinion into evidence from an 'acceptable medical source' because the opinion was based on Barnes' treatment of plaintiff, not Dr. Sadowski's treatment of plaintiff." (citing *Garcia v. Astrue,* No. 1:10–CV–00542–SKO, 2011 U.S. Dist. LEXIS 98299, at *15 (E.D.Cal. Sept. 1, 2011) (doctor's signature on reports authorized by physician assistant did not transform reports into evidence from an "acceptable medical source" when the physician assistant prepared the reports following his examination of claimant))); *Wellington v. Colvin,* No. 1:11–cv–00008–REB, 2014 U.S. Dist. LEXIS 45786, at *22–25 (D.Idaho Mar. 31, 2014) (rejecting argument that opinion of physician's assistant working in conjunction with physician constitutes "acceptable medical source" and stating that "[a]lthough the Court recognizes that there are good reasons for recognizing the opinion of a physician's assistant who provides regular treatment to a patient, the regulations at this time do not *require* an ALJ to treat a physician assistant's medical opinion the same as that of a treating physician."); *Curtis v. Colvin,* No. CV 12–00396–TUC–JGZ (DTF), 2014 U.S. Dist. LEXIS 20510, at *15–16 n.3 (D.Ariz. Jan. 24, 2014) ("[T]he *Gomez* rationale was based on a regulatory provision that was repealed in 2000."); *Olney v. Colvin,* No. 12–CV–0547–TOR, 2013 U.S. Dist. LEXIS 122105, at *10-11 (E.D.Wash. Aug. 27, 2013) (recognizing that, following 2000 amendment to 20 C.F.R. § 416.913(a), *Gomez*'s conclusion that a physician assistant who works in conjunction with a physician constitutes an acceptable medical source "is no longer good law."); *Casner v. Colvin,* 958 F.Supp.2d 1087, 1097 (C.D.Cal.2013); *Farnacio,* 2012 U.S. Dist. LEXIS 130913, at *6 ("The subsection of the regulation which was the basis of the *Gomez* finding regarding nurse practitioners as acceptable medical sources when part of an interdisciplinary team was deleted by amendment in 2000. 65 Fed.Reg. 34950, 34952 (June 1, 2000).... There is [currently] no provision for a physician assistant to become an acceptable medical source when supervised by a physician or as part of an interdisciplinary team." (citation omitted)); *Hudson v. Astrue,* No. CV–11–0025–CI, 2012 U.S. Dist. LEXIS 154871, at *13 n.4 (E.D.Wash. Oct. 29, 2012) (recognizing that regulations underscoring *Gomez* finding "have been amended since the *Gomez* decision, and the Commissioner no longer includes "interdisciplinary team," under the definition of acceptable medical sources."); *Reynolds v. Astrue,* No. CV–09–0213–CI, 2010 U.S. Dist. LEXIS 92701, at *21 (E.D.Wash. Sept. 3, 2010).

> The Court agrees with the conclusions of the many courts that have considered *Gomez* 's continuing validity in light of the 2000 amendment to 20 C.F.R. § 416.913(a). Accordingly, the Court finds that Ms. Johnson's September 2013 report does not rise to the level of an "acceptable medical source" due to the handwritten note of agreement from an unidentifiable physician

*Id.*

The Court also takes note of the case *Hudson v. Astrue*, No. CV-11-0025-CI, 2012 WL 5328786, at *1 (E.D. Wash. Oct. 29, 2012), in which the District Court held that the ALJ did not commit error in rejecting the opinion of a physician's assistant, which had been co-signed by the physician. The Court in that case explained:

> Review of the record shows Dr. Rosekrans' associate, Sheri Hoveskeland, interviewed Plaintiff and administered objective psychological tests in February 2005. In the accompanying form report, Ms. Hoveskeland found severe functional limitations in Plaintiff's ability to perform routine tasks and care for herself and market limitations in her ability to respond and tolerate pressures in the work setting. Although Dr. Rosekrans adopted findings in Ms. Hoveskeland's narrative report and co-signed the form report, the findings are treated as those of Ms. Hoveskeland.
>
> Ms. Hoverskeland is not an acceptable medical source under the Commissioner's regulations. Although Dr. Rosekrans adopted Ms. Hoveskeland's findings, there is no evidence he observed, examined, or treated Plaintiff; therefore, he is not considered an examining psychologist under the Regulations. Further, the record indicates that Dr. Rosekrans' signature on the form report serves as authorization to release the information to the Board of Veteran's Appeals.

*Id.* at 4 (internal citations omitted). In other words, the District Court declined to treat the opinion of a non-acceptable medical professional as the opinion of a physician merely because the physician had signed the opinion. It is worth noting, however, that in *Hudson* the physician had not treated the claimant, whereas in the case before this Court, the signing physician had treated the claimant.

With this case law in mind, the Court finds that the questionnaires completed by the Personal Service Coordinator and MFT Intern are not entitled to deferential treatment merely because they were signed by a treating physician indicating review and agreement. Therefore, the ALJ's reasoning of giving little weight to these opinions based on their authors was not legal error.

5

The record also reveals that the questionnaire was not in fact based on Dr. Ensom's own treatment of claimant. Although those treatment notes are not uniformly positive, their assessments are inconsistent with the severe restrictions in the questionnaires. For example, Dr. Ensom's notes of a May 10, 2012 visit indicates, "she is doing well. Prazosin continues to benefit nightmares. Sleep is ok." AR 418. Mental Status Examinations for appearance, behavior, speech and sensorium are all "WNL," i.e., within normal limits. AR 418. S*ee also* AR 419 ("Feeling 'good' mentally," Mental Status WNL); AR 617-618 (mental status examination within normal limits); AR 619 ("States that she is doing well," and indicating normal mental status examinations). In contrast, the MFT Intern's notes describe more severe symptoms, based on what the claimant told the MFT Intern.[1] *See e.g.*, AR 429 ("Cl reported she still experiences depression including feelings of hopelessness, sadness, low self-esteem, diminished interest/pleasure in activities, sleep problems, nightmares, diminished ability to think and concentrate, limited social contact, irritability, and anxiety/worry."). The marked difference between these reports indicates that the opinions reflected in the questionnaire at issue were based on the observations and treatment of the MFT Intern and Personal Coordinator, and not Dr. Ensom's own observations and treatment. Put another way, the lack of support in Dr. Ensom's notes for the disability opinions in the questionnaires supports the ALJ's decision to give little weight to those questionnaires because they were not prepared by Dr. Ensom.

For those reasons, the Court finds that the decision of the Commissioner of Social Security is supported by substantial evidence, and the same is hereby affirmed.

The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **April 3, 2018**

/s/ Eric P. Grosj

UNITED STATES MAGISTRATE JUDGE

---

[1] It is worth noting that the ALJ found that "[t]he claimant exhibits malingering behavior," (AR 17), and Plaintiff did not challenge this finding.